Mr. Justice Thacher
delivered the opinion of the court.
This case comes up by writ of error, to the circuit court of Claiborne county.
Four causes of error are assigned. First, that the court below erred in ruling out from the evidence the original record of the notary, who was deceased, of the protest and notice to the defendant ; secondly, in ruling out the testimony of Yernon, which was tendered to prove and explain the notary’s record; thirdly, in ruling out a letter of defendant to Watt, Burlce & Co.; and, fourthly, in ruling out the deposition of Montgomery, relating to acknowledgments of defendant in regard to the reception by him of notice.
The notarial record contained these words indorsed upon it, to wit, “Notices to James Watson, administrator of B. Blanton. G. Port.” It was proposed to prove by Yernon, who was a relative of the deceased notary, his clerk at the time of the protest, and familiarly, acquainted with his customs in that business, &c., that the above-mentioned record was his, and in his hand-writing, and that he understood the indorsed words to mean, that “notice had been regularly sent to said Watson, administrator of said Blanton, on the day after the day of protest, at Port Gibson, by mail.”
We think it would have been going too far, to have permitted Yernon to give his understanding and opinion, however well founded, of what was the meaning of the notary’s indorsement upon his record. That was a fact for the jury to determine, from the words themselves. In other respects, regarding the hand-writing, &c., his testimony was admissible. The memorandum itself, so far as it went to prove notice of protest, was improperly excluded, as well as the record, for its extent in evidence. It does not appear but that the plaintiff was prepared, upon the admission of the notarial record, to supply, by *136 other testimony, what farther he might have deemed necessary, to bring home to the defendant proof of notice of the dishonor of the note.
The exclusion from the jury of the letter of the defendant to Watt, Burke & Co., was, we consider, incorrect. If there be not enough in the contents of the letter, to identify the note therein spoken of, with the note sued upon, yet, taken in connexion with the deposition of Montgomery, there might be a presumption of it sufficiently strong, to be left to the determination of the jury. The letter commences thus: “Mr. Lewis Watson' goes down to arrange a note with Dr. Duncan, which Mr. Blanton is indorser on, for C. Jefferson, deceased,” &c. The deposition contains this language : “ This affiant further states, that said Watson told this affiant, at the same time, that he would send for his grandson in-law, Lewis Watson, on the next day, to Natchez, and have the matter arranged with Dr. Duncan,” &c. The date of the letter’, and the time spoken of by Montgomery, were matters of comparison for a jury. Further proof might have been ready to fill up the deficiency, if considered wanting.
It was proposed to establish, by Montgomery’s deposition, the acknowledgment, by defendant, of the.receipt of notice by him. The defendant in error objects, that he, himself, was a competent witness in the cause, and that proof by another, of his declarations, would be secondary evidence, and inadmissible for that reason.
This point involves the question, whether, and under what circumstances, a party to a shit may be witness therein. A careful examination of the authorities has led us to the conclusion, that a party to the record, who is uninterested in the event of the suit, may be admitted to testify in his own favor, if not objected to by the opposite party, and against himself, if he does not object.
The general rule is, that a party to the record is inadmissible, as a witness. The different English law-writers give various reasons and explanations of the rule. In New York and Massachusetts, the rule of exclusion was formerly peremp *137 tory, on the ground of policy, though lately somewhat relaxed. The other stated, where the point has come up, define the cause of the rule, some upon the mere abstract objection of being a party to the suit; and others, because the witness must have some interest growing out of that relation. Starkie, in his work upon Evidence, considers the reason of the rule a mixed one of interest and policy; of interest, because of the temptation to commit perjury, when the witness is called in his own favor; and of policy, when being called on the other side, he refuses to answer. That it is at the option of the party to testify, when called against himself, the last quotation, explaining the meaning of the term “ policy,” abundantly shows. This is further confirmed, by the opinion of Chief Justice Tindal, reported in Worrall v. Jones, et als., 20 Eng. C. R. 177, who says, “ that it is a rule founded in good sense and sound policy, that a party to the record should not be compelled, against his consent, to become a witness in a court of law. In 2 Cowen, and Hill’s notes to Phillips on Evidence, p. 134, n. 122, sustained by references to numerous authorities, it seems established, that “it is a general rule, in all common law courts, that a party on the record cannot be received to testify, either in his own favor, if objected to by the opposite party, or against himself, if he object.” The latest work upon the subject of evidence, Greenleaf, 398, remarks, “ the rule, which excludes a party to the suit from being admitted as a witness, is also a rule of protection ; no person, who is a party to the record, being compelled to testify. It is only when he consents to be examined, that he is admissible in any case, nor then, unless under circumstances; ” which the author goes on to explain.
Now, in applying these conclusions to the case before us, what inevitably follows ? The plaintiff below, in compliance and accordance with the general rule, which excludes a party to the record to testify, stood prepared to establish, by the declaration of the defendant to a second person, what he conceived to be evidence, that the defendant had received due notice of the dishonor of the note. In order to exclude this evidence, it *138 was incumbent on the defendant, if he desired to have the benefit of the exception to the general rule, to have had himself in readiness, and announced his willingness to testify to the point in issue. Ownings and Pict v. Low, 5 Gill & John. R. 134. He does not seem to have done so. The plaintiff could , not compel his attendance; it was in the choice and option of the defendant to testify, or not testify. In this view of the case the court below erred, in excluding the deposition of Montgomery.
The judgment must be reversed, and a new trial granted, by the circuit court of Claiborne county.