### KELLEY v. STATE.

Opinion delivered February 5, 1923.

CRIMINAL LAW—INQUIRY AS TO SANITY.—Neither at common law nor under the statute (Crawford & Moses' Dig., § 3251) is one convicted of a less than capital offense entitled to have an inquiry in the circuit court as to his sanity; Crawford & Moses' Dig., § 9669, providing relief for convicts in the State Penitentiary on being found to be insane.

Certiorari to Logan Circuit Court, Southern District; *James Cochran,* Judge; petition dismissed.

*Evans & Evans,* for appellant.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

PER CURIAM. The petitioner, A. J. Kelley, states in his petition that at the January term, 1922, of the Logan Circuit Court he was convicted on a charge of murder in the second degree and sentenced to a term in the penitentiary, and that the judgment of conviction was, on appeal, affirmed by this court ( *Kelley* v. *State,* 154 Ark. 246); that at the August term, 1922, of the said circuit court there was presented to the court by his wife, as next friend, a petition praying for a writ of error *coram nobis,* on the grounds that at the time of the trial and conviction he was insane and not capable of making a rational defense, but that the circuit court denied the writ, and on appeal to this court the judgment of the circuit court was affirmed (*Kelley* v. *State,* 156 Ark. 188); that

on January 22, 1923, petitioner appeared in the circuit court, surrendered himself into custody under his bond, and presented to the court, by his counsel, a petition stating that he was then insane, and asking the court to impanel a jury to inquire into the question of his sanity or insanity at that time, and that the execution of the judgment of conviction be postponed or suspended and petitioner committed to the State Hospital for Nervous Diseases for treatment, instead of being immediately sent to the penitentiary, and that the circuit court denied said petition and ordered immediate execution of the judgment of conviction, and denied an appeal to this court. The prayer of the petition is that this court issue a writ of mandamus to the circuit judge, sitting in term time, to grant an appeal as prayed for by petitioner, and that an order be made by this court admitting the petitioner to bail during the pendency of the proceeding here to review the action of the circuit judge.

The petition has been submitted to this court to determine, in the first instance, whether there is a showing made in the petition to justify the issuance of the writ and the allowance of bail during the pendency of the proceeding.

The court has reached the conclusion that the facts set forth in the petition are not sufficient to justify the issuance of the writ of mandamus, as it is clear that the petitioner asked for relief which the circuit court was not authorized to grant.

Learned counsel for petitioner rely upon the rule of the common law, which has been repeatedly recognized by this court, that the execution of a judgment of conviction against an insane person ought not to be carried out, and that the court wherein the conviction was had has power, before execution, to stay sentence during the period of insanity. *Taffe* v. *State*, 23 Ark. 34; *Ferguson* v. *Martineau*, 115 Ark. 317.

The common-law rule, however, was confined to relief sought in capital cases. 4 Blackstone, p. 24; 1 Haw-

kins' Pleas of the Crown, ch. 1, sec. 3; 1 Hale, pp. 34-35. Blackstone stated the rule as follows:

"If a man in his sound memory commits a capital offense, and before his arraignment he become absolutely mad, he ought not by law to be arraigned during such frenzy, but be remitted to prison until that incapacity be removed; the reason is because he cannot advisedly plead to the indictment; and this holds as well in case of treason as felony, even though the delinquent in his sound mind were examined, and confessed the offense before his arraignment. And if such person, after his plea and before his trial, become of nonsane memory, he shall not be tried; or if, after his trial, he become of nonsane memory, he shall not receive judgment; or if, after judgment, he become of nonsane memory, his execution shall be spared, for, were he of sound mind, he might allege somewhat in stay of judgment or execution."

Sir Matthew Hale stated the common-law rule in substantially the same terms as in Blackstone, and added the following qualifications:

"But because there may be great fraud in this matter, yet if the crime be notorious, as treason or murder, the judge, before such respite of trial or judgment, may do well to impanel a jury to inquire *ex officio* touching such insanity, and whether it be real or counterfeit." 1 Hale's Pleas of the Crown, p. 35.

There is nowhere found a statement of any rule of the common law which would extend relief in a felony case of less degree than a capital offense, the reason evidently being that it is a rule of extreme emergency to prevent the execution of the death penalty on an insane felon.

The lawmakers of this State, in the enactment of the Criminal Code, § 291 (Crawford & Moses' Digest, § 3251), provided a statutory remedy in such cases by empowering the sheriff charged with the execution of a death penalty to impanel a jury to determine the ques-

tion of sanity or insanity of the convicted felon. It is thus seen that the lawmakers saw fit to go no farther than the common-law rule in affording a statutory remedy.

There is also a statute providing for relief to a convict confined in the State Penitentiary who is found to be insane. Crawford & Moses' Digest, § 9669.

It is thus seen that there is no authority in the common law or in the statute for the remedy now sought by the petitioner, and the circuit court was correct in refusing to grant the prayer of the petition.

The prayer of the petition filed herein is therefore denied, and the petition is dismissed.